UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21783-CIV-SEITZ/SIMONTON

PRIDE FAMILY BRANDS, INC,

    Plaintiff,

v.

CARL'S PATIO, INC., CARL'S PATIO
WEST, INC., WOODARD-CM, INC., and
SCOTT COOGAN,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [DE 61]

THIS CAUSE comes before the Court on Defendants Woodard-CM, Inc. ("Woodard") and Scott Coogan's Motion for Partial Summary Judgment [DE 61] wherein they seek summary judgment on Plaintiff's design patent infringement claim ("Claim1").[1]  Plaintiff Pride Family Brands, Inc. ("Pride") designs and manufactures patio furniture.  Woodard is an industry competitor.  Pride alleges that chairs from Woodard's Jumby Bay Collection copy three of Pride's patented designs for chairs and a patented design for ornamental features on a chair leg.  Woodard and Coogan seek summary judgment on grounds of patent invalidity and non-infringement.  They contend two of the asserted patents are invalid and that none of Woodard's

---

[1] Defendants also seek summary judgment as to their Counterclaims for declarations of non-infringement (Counterclaim 1 ) and patent invalidity (Counterclaim 2).  The Court will grant summary judgment as to those claims based on the reasoning set forth below and will include those declarations in the final judgment.  Defendants have also sought attorney's fees and costs under 35 U.S.C. § 285.  That request for sanctions will be addressed in a separate Order to Show Cause.  Finally, in a separate motion, Woodard has sought summary judgment as to Pride's remaining claims - trade dress infringement/false designation of origin (Claim 2), Unfair Competition (Claim 3), Unjust Enrichment (Claim 4), and Deceptive Acts and Practices (Claim 5).  [DE 111].  That motion will be resolved in a separate Order.

1

designs are substantially the same as Pride's.

Having carefully reviewed the motion, opposition [DE 79, 80, 81], reply [DE 90], and the record, summary judgment as to Claim1 must be granted for Defendants. As to patents D520,767 S ("the '767 patent") and D521,263 S ("the '263 patent"), they are invalid because Pride variously described the designs in a printed publication, publically displayed the designs, and sold embodiments of the designs more than one year before the patent applications were made. With respect to the two remaining patents-in-suit in Claim 1, D522,778 S ("the '778 patent) and D519,293 S ("the '293 patent"), no reasonable juror could conclude that the accused devices infringe either patent.[2] Accordingly, summary judgment as to non-infringement of the '778 and '293 patents must be granted for Defendants.

## I. BACKGROUND[3]

The following discussion and the analysis treat the four patents-in-suit in two groups. Patents 1 and 2, the '767 and '263 patents, are collectively referred to as the "Invalid Patents." Patents 3 and 4, the '778 and '293 patents, are collectively referred to as the "Allegedly Infringed Patents."

### a. The Invalid Patents

The '767 and '263 patents are designs for patio chairs in a tropical motif. The designs of '767 and '263 patents are embodied by Pride's Coco Isle Sling Chair and the Coco Isle Cushion Chair respectively. Pride initially applied for both patents on August 18, 2004.

Pride published pictures of the Coco Isle collection, including the Sling and Cushion

---

[2] Plaintiff previously alleged Defendants infringed a fifth patent, D519,762. [DE 6, ¶15]. Subsequently, Plaintiff withdrew claim that Defendants infringed that patent. [DE 59, p. 1, fn. 1].

[3] *Unless otherwise noted the facts are taken from the undisputed record evidence.*

Chairs, in its 2004 product-line catalog. [DE 61-8, Ex. F, p 9]; [DE 61-8, Ex. F, p. 5]. The 2004 catalog was distributed to potential customers at the 2003 "pre-market" industry trade show in Chicago.[4]  When questioned at his deposition, Pride's CEO Jamie Lowsky agreed that the purpose of distributing the catalog was to "market, promote, and hopefully sell the furniture to retailers."[5] (Deposition of Jamie Lowsky, DE 61-9, 37:16-20).

The Coco Isles collection was unveiled at the same 2003 Chicago pre-market. The 2003 pre-market was attended by hundreds of people; including buyers for retailers who were Pride's targeted audience. For the 2003 pre-market, as it has done for twenty-five years, Pride leased an 8000 square foot show room in the Merchandise Mart. Pride displayed the Coco Isles collection in the show room and showed it in "a very sellable way . . . no different than a furniture store." (Deposition of Steven Lowsky, DE 61-5, 76:15-17). The collection, including the Sling and Cushion chairs, was in its final form at its unveiling. Pride's CEO Jamie Lowsky confirmed that Pride had its price lists for the collection "available" at the 2003 pre-market though these were not generally distributed. The unveiling of the Coco Isles collection was a resounding success. [DE 61-5, p. 82]. Pride made several sales in connection with the pre-market, including to Defendants Carl's Patio. *Id.* at p. 82 – 83.

The central dispute with regard to the validity of '767 and '263 patents is when in 2003 was the Coco Isle's collection first shown. Pride claims the collection was first exhibited in September [DE 79, p. 6], while Defendants claim Pride showed the collection in July.

---

[4] The "pre-market" is a yearly event sponsored by the of International Casual Furnishing Association, a patio furniture trade association. The pre-market is held in the Chicago Merchandise Mart, a large display space in downtown Chicago encompassing an entire city block. The pre-market is held in advance of the main "Casual Show" which occurs every year in September.

[5] Although it disputes the timing of the pre-market, there is no dispute the catalog was distributed at the pre-market. [*See* DE 81, ¶17].

3

In support of its July date for the collection's showing, Defendants cite the following record evidence: (1) three 2003 press releases *from Pride's own website* discussing the Coco Isle collection being displayed at the July 2003 pre-market,[6] (2) sales records from Carl's Patio ("Carl's"), a Pride customer, showing that Carl's ordered Coco Isles furniture, including the sling and cushion chairs on July 30 and 31, 2003, and (3) a report from a trade publication called *HFN* magazine dated August 4, 2003, which states that the 2003 Chicago pre-market occurred "last month" and that Pride had introduced the Coco Isle collection at the pre-market.[7,8] Defendants also argue that Pride's President Steven Lowsky and its CEO Jamie Lowsky each confirmed in their respective depositions that the collection was shown for the first time at the July 2003 pre-market.

On the other hand, to support its counter-argument that it unveiled the Coco Isles collection in September, Pride offers affidavits from Steven and Jamie Lowsky made after their depositions wherein each states he was unsure of the dates of the premarket when deposed. Pride also cites an affidavit from Joe Logan, the Executive Director of the International Casual Furnishings Association (ICFA), the organization that sponsors the Chicago pre-market. In the affidavit Logan states there was no *organized* preview until 2005. Woodard, however, filed a

---

[6] For example, a Pride press release dated July 24, 2003 titled "August Open House – Chicago Merchandise Mart" states: "Based on the fantastic response to the their 2004 offerings at the recent Chicago Pre-Market, Pride Family brands will host a follow up August Open House. . ." The press release goes on to mention the "overwhelmingly positive response to [the] new line up for the 2003/2004 season at [the] pre-market" including "the beautiful new 30 piece Coco Isle Collection." [DE 90-2].

[7] Pride argues the *HFN* article is hearsay. Trade publications may be established as reliable authority and excepted from the general prohibition against hearsay evidence. Fed. R. Evid. 803(18). As such, the Court may properly consider such evidence at the summary judgment stage. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (stating that a district court may consider a hearsay statement at summary judgment provided the hearsay statement can be "reduced to admissible evidence at trial.")

[8] Additionally, Woodard cites testimonial evidence in the form of a declaration from Defendant Scott Coogan who states that the 2003 pre-market event happened in July.

4

rebuttal declaration wherein Logan states that while official preview shows were not held until 2005, the ICFA's predecessor did in fact establish specific dates for an "unsponsored" pre-market event which occurred in July 2003. [DE 90-3].

  b. *The Allegedly Infringed Patents*[9]

    (i) The '778 Patent and Accused Devices

The '778 patent is for a furniture leg ornamentation. The patent discloses an ornamental leaf structure with three rings at its base. The leaf and ring structure caps the chair's legs at the top where the leg joins the chair's arms. The leaf structure is joined to the chair arms with a decorative lashing that is applied in a distinctive pattern. Pride contends Woodard infringed the '778 patent by directly copying the lashing in Woodard's production of its Jumby Bay Sling Chair, Cushion Chair, and Lounge Chair. The patented design appears below:



    (ii) The '293 Patent and Accused Device

The '293 patent is also for a chair in a tropical motif. The patent discloses a chair

---

[9] The parties do not dispute the design features of the allegedly infringed patents. The descriptions of the patented designs are adapted from the parties' Joint Claim Construction statement. [DE 59].

5

design with four straight legs joined by diagonally intersecting cross-braces. The legs feature a decorative casting meant to simulate a knot in a piece of bamboo. The rear legs form a smooth open arc to the rear. The armrests extend upward from the rear leg and also have a decorative bamboo casting. The back of the chair has straight intersecting cross-braces with an overlapping decorative circle, resembling a wagon wheel, centered on the intersection of the braces. The circle contains decorative hand wrapping at the four points where the circle intersects with the cross braces. The '293 patent is commercially embodied by Pride's Cabana Bay Cushion Chair.

Pride contends that Woodard's Jumby Bay Cushion Chair is "a direct copy of the patented Cabana Bay chair in every way." [DE 30, p. 3]. The record contains several photographs of the Jumby Bay Cushion Chair from multiple angles. [DE 64-2].[10] The Jumby Bay Cushion Chair has bowed cross-braces that connect its legs, no cast features, and armrests which are mostly straight but have slight downward bend at their ends. The back of the chair is composed of two half-circles which are bridged by an upper, slightly concave segment and a lower, slightly convex segment. The '293 design is pictured below on the left, the accused chair is pictured on the right:

 

---

[10] Inexplicably, as support for its contention that the Jumby Bay Cushion Chair is "a direct copy of the patented Cabana Bay chair in every way" Plaintiff only cites to an exhibit which compares its sling chairs to Jumby Bay sling chairs despite the fact that the '293 patent does not relate in any way to sling chairs. [*See* DE 83-1].

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

The Court has viewed the record in the light most favorable to the Plaintiff and as discussed in Section II, finds that the first and second patents are invalid under three separate bars imposed by the 35 U.S.C. § 102(b). As to patents three and four discussed in Section III, no juror applying the objective observer test could find that accused chairs infringe the '786 or '293 patent.

## II. PATENT INVALIDITY UNDER 35 U.S.C. § 102(b)

Pursuant to 35 U.S.C. §102(b) a design is entitled to a patent unless it is has been (1) described in a printed publication; (2) in public use; or (3) on sale more than one year prior to the date of the application of the patent. Defendants allege that each of these bars is separately

applicable to the '767 and '263 Patents. Every issued patent is entitled to a presumption of validity. *Novo Nordisk A/S v. Caraco Pharm. Lab., Ltd.* 719 F.3d 1346, 1352 (Fed. Cir. 2013). However, a challenger may prove a patent claim to be invalid under 35 U.S.C. §102(b) based on clear and convincing evidence. *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009) (internal citation omitted). Here, Woodard has proven by clear and convincing record evidence that each of these bars apply. Accordingly, summary judgment as to the '767 and '263 patents' invalidity is warranted.

### a. The Coco Isles Collection Was Shown at the 2003 Pre-Market in July

The only disputed factual issue as to validity is whether the Coco Isle Collection was shown at the 2003 Chicago pre-market in July 2003 or in September 2003. The effective date of the 35 U.S.C. § 102(b) one-year period was August 18, 2003, one year before the initial applications for the '767 and '263 patents. *See Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568 (Fed. Cir. 1988). Thus, if as Pride suggests, the collection was unveiled in September 2003, the evidence of publication, public use, or sale would not entitle Defendants to summary judgment because such publication, public use, and/or sale would have occurred within the year safe-haven before the application was made. However, the record evidence overwhelmingly supports that the collection was shown in July such that no reasonable juror could find otherwise.

Defendants have produced three separate press releases from *Plaintiff's own website* which corroborate that the 2003 Chicago pre-market occurred between July 16 and July 20 and that Pride unveiled the Coco Isles Collections at the July pre-market. Additionally, a trade publication called *HFN* magazine dated August 4, 2003, reported that the 2003 Chicago pre-market occurred "last month" and that Pride had introduced the Coco Isle collection at the pre-

market. Plaintiff has not produced any evidence to rebut either that the trade show took place in July 2003 or its display of Coco Isle Collection at the event.[11] To the extent Plaintiff cites the affidavit of Joe Logan, Executive Director of ICFA, to show that "official" pre-market shows did not occur until 2005, Plaintiff has not raised a genuine disputed material issue of fact. Defendant's rebuttal declaration from Mr. Logan explains that while the first "official" pre-market took place in 2005, ICFA's predecessor organization did hold an unsponsored July 2003 pre-market between July 17 and July 20, 2003. Any distinction between an "official" show and an "unofficial" show is immaterial for purposes of a § 102(b) analysis. When the record evidence is viewed in the light most favorable to Pride, no reasonable juror could conclude that Pride unveiled the Coco Isles collection at a September 2003 show rather than at the July 2003 pre-market.

### b. The '767 and '263 Patents are Invalid Under the "Printed Publication" Bar

The commercial embodiments of the '767 and '263 patents, the Coco Isles Sling and Cushion Chairs, were clearly pictured in Pride's 2004 catalog, which it distributed to customers at its Merchandise Mart showroom at the July 2003 pre-market in Chicago. Whether a document constitutes a printed publication under § 102 is a question of law based on the surrounding facts. *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1332–33 (Fed. Cir. 2009). Here, to qualify as a printed publication, the 2004 Pride Catalog must have been disseminated or otherwise made accessible to persons interested and ordinarily skilled in the subject matter to

---

[11] To the contrary, in their depositions Plaintiff's President and CEO each agreed with the premise that the Chicago pre-market occurred in July. Plaintiff's President was emphatic in discussing the success of the Coco Isles Collection launch at the pre-market, comparing it to a "homerun," "touchdown," or hockey "goal." [DE 61-5, p. 82]. In subsequent affidavits filed in support of Plaintiff's opposition, neither the President nor CEO recants his assertion that the Coco Isle Collection was first displayed at a pre-market show. Rather, the affidavits backtrack from their earlier agreement and state that neither individual could remember when the pre-market occurred given that the event happened over ten years earlier. The affidavits also say each learned that the first "official" pre-market occurred in 2005, and based on this realization they *infer* their earlier deposition testimony was incorrect.

9

which the advertisement relates prior to the critical date. *See Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008); *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986) (explaining that public accessibility is the "touchstone in determining whether a reference constitutes a 'printed publication' bar under 35 U.S.C. § 102(b)").

In his deposition Jamie Lowsky agreed that the catalog was distributed at the pre-market "in order to market, promote, and hopefully sell the furniture to retailers." The pre-market was attended by several hundred people, some of whom were representatives of retailers. Pride distributed the catalog to motivate industry participants, such as buyers for retailers, to purchase its furniture, including the embodiments of the patents at issue which were pictured. In so doing, Pride made its designs accessible to interested persons ordinarily skilled in the subject matter and because embodiments of the '767 and '263 patents were pictured a printed publication distributed in July 2003, more than one year before the August 18, 2004 application date, those patents must be found invalid on this basis as well.

### c. The '767 and '263 Patents are Invalid Under the "Public Use" and "On Sale" Bars

Inventions already (1) in public use and (2) ready for patenting before the critical date are barred from being patented. 35 U.S.C. §102(b); *see also Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005). Whether a patent is invalid due to public use is a question of law and is based on the underlying facts. *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2002). Addressing the "ready for patenting" issue first, here, the designs were unquestionably ready for patenting. As Plaintiff's President testified, the furniture in the Merchandise Mart showroom was displayed in "a very sellable way . . . no different than a furniture store." The '767 and '263 patents were unaltered from the designs of the Coco Isles

Sling and Cushion chairs shown at the pre-market. Where, as here, a patent's subject is already "reduced to practice" it is "ready for patenting." See *Pfaff v. Wells Electr., Inc.*, 525 U.S. 55, 67–68 (1998). Turning to public use, an invention is in public use if it is commercially exploited.[12] Pride's President Steven Lowsky affirmed that Pride made a number of sales in connection with the pre-market, including to Defendant Carl's Patio ("Carl's). That testimonial evidence is corroborated by sales documents from Carl's Patio which show that Carl's ordered both the Coco Isle Sling and Cushion chairs on July 30, 2003 and July 31, 2003, dates which are consistent with those items being displayed at the July 2003 pre-market. The record evidence of public use before August 18, 2003 is clear and uncontroverted. As such, the Public Use bar applies and a finding of invalidity on summary judgment is warranted.

The analysis for the "on sale" bar proceeds much the same way as that of the "public use" bar. Pursuant to 35 U.S.C. §102(b), the on sale bar applies when, prior to the critical date, (1) an invention is ready for patenting and (2) the claimed invention is the subject of a definite sale or a commercial offer for sale. *Hamilton Beach Brands, Inc. v. Sunbeam Prods. Inc.*, 726 F.3d 1370, 1374 (Fed. Cir. 2013). As is discussed above, the '767 and '263 designs were already in practice and therefore meet *Pfaff's* "ready for patenting" requirement. Also as is described above, Woodard has demonstrated by clear and convincing record evidence that Pride sold the designs more than one year before the applications for their patents were filed. Evidence of a single sale is sufficient to trigger the "on sale" bar. *In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985). As such, summary judgment as to the invalidity of the '767 and '263 patents based on the "on-sale"

---

[12] Public accessibility to a subsequently patented invention may also justify a bar under the public use provision of section 102(b). While the record evidence clearly supports that Pride displayed the subsequently patented designs in a showroom open to hundreds of prospective customers in July 2003 and received media coverage for it display, the Court does not reach the issue of public accessibility because a patent may be held invalid on public use grounds for either commercial exploitation *or* public accessibility. *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005).

bar is also warranted.

### III. DESIGN PATENT INFRINGEMENT

"A design patent protects the nonfunctional aspects of an ornamental design as seen as a whole and as shown in the patent." *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006). Design patent infringement is a question of fact which the patent holder must prove by a preponderance of the evidence. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993). Determining whether a design patent is infringed is a two-step process. First, when appropriate, the design patent's claims are construed.[13] Second, the patented design is compared to the accused device. As the Federal Circuit observed in *Egyptian Goddess, Inc. v. Swisa*, Inc., 543 F.3d 665, 670 (Fed. Cir. 2008), the Supreme Court established in *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871) that the "ordinary observer" test applies to determine whether a design patent is infringed. Under that test "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham*, 81 U.S. at 528.

   a. *The Defendants Have Not Infringed the '778 Patent.*

The '778 patent is for a furniture leg ornamentation. The patented design is composed of a relatively large cast leaf with three ring structures at its base. This leaf/ring structure is connected to a chair arm with lashings that are laid in a distinctive pattern. Plaintiff alleges that

---

[13] The parties have filed a Joint Claim Construction Statement [DE 59] wherein each patented design is verbally described. The Federal Circuit, however, has warned against the reliance on verbal constructions in design patent cases. Accordingly, the Court does not adopt the Joint Construction and instead construes the claims of the patents solely as incorporating the figures contained therein. *See Egyptian Goddess*, 543 F.3d at 679. (Explaining in dicta that "the preferable course ordinarily will be for a district court not to attempt to "construe" a design patent claim by providing a detailed verbal description of the claimed design.")

Defendants infringed the patent only in the Defendant's Jumby Bay chairs by copying the bamboo wrapping pattern disclosed in the patent. [DE 30, p. 3]. A valid claim of infringement cannot lie under these facts.

Infringement is assessed from the vantage of the ordinary observer. The ordinary observer is one familiar with the prior art. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010). Bamboo wrapping has been practiced elsewhere in the prior art of chairs in the tropical motif. *See e.g.,* U.S. Patent D498,069 S [DE 65-2, p. 14]; U.S. Patent D495,512 S [DE 65-2, p. 38]; U.S. Patent D512,233 S [DE 65-2, p. 41]. No ordinary observer could conclude that the wrapping pattern of the design itself was such that a similar wrapping pattern would cause confusion between the patented design and the accused chair.

Moreover, a design patent protects "overall designs," not individual features of designs. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239–41 (Fed. Cir. 2009). Accordingly, when courts evaluate design infringement claims they look to similarities in overall design, "not similarities of ornamental features in isolation." *Amini Innovation Corp. V. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006). Any ordinary observer would regard the leaf and ring structure as the most distinctive aspect of the overall design. None of the accused chairs are alleged to contain the prominent leaf and ring structure. Given the complete absence of such a structure or one comparable to it, there is no evidentiary basis to find similarity or confusion between the patented design and the accused products. As such, summary judgment as to non-infringement of the '778 patent is required.

   b.  *The Defendants Have Not Infringed the '293 Patent.*

The design of the '293 patent is for a chair with four legs and two arms, done in the tropical motif. The accused device, the Jumby Bay Cushion Chair, is also a chair with four legs,

two arms, in the tropical motif. To the ordinary observer, however, this is where the similarities end. Despite the fact that both chairs are done in the tropical motif, when comparing the patented design and the accused device side-by-side an observer's initial impression is that each presents a different overall aesthetic. The '293 patent's design uses straight lines juxtaposed with natural curves. For example, the most prominent feature of the patented design is the large circular ornamentation, a "wagon wheel," on the chair's back. The wheel centers on the intersection of the straight cross-braces which compose the chair's back. The same linear cross-brace structure is reiterated at the underside of the chair design, which features straight diagonally laid intersecting cross-braces.

In contrast to the linearity of the '293 design, the overall aesthetic of accused device is one of wide, arching curves. Two half circles joined by an upper and lower convex and concave segments make up the rear of the chair. The rounded, convex/concave motif is reiterated in the chair's underside. Two parabolic bows connect the chair's four legs and meet at their vertices. The only instance of straight lines on the accused device is at the chairs arms, which are slightly downwardly bent at their ends. By contrast, the arms of '293 design have a sudden upward curve at their ends. Further, on closer inspection, an observer would notice that the '293 design calls for casts of knots at the arms and legs meant to enhance the impression that the chair is made from bamboo. The accused device does not have these embellishments or anything similar. Given the marked dissimilarities in the overall designs of the '293 patent and the accused device, no reasonable juror properly applying the objective observer test could find that the Jumby Bay Cushion chair infringes on the '293 patent. As such, summary judgment is warranted.

## IV. CONCLUSION

The first two patents, '767 and '263, are invalid because each of three separate bars set forth in 35 U.S.C. §102(b) applies. Based on the record before the Court, the undisputed evidence underscores that no reasonable ordinary observer having knowledge of the prior art could find that the accused chairs infringe the second two patents, '778 and '293. Accordingly, it is

ORDERED THAT

Defendant's Motion for Partial Summary Judgment [DE 61] is **GRANTED**. The Court will separately enter final judgment which will include declarations of non-infringement and invalidity as to U.S. Patent D520,767 S and D521,263 S.

DONE AND ORDERED in Miami, Florida, this 14th day of January, 2014.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   Honorable Andrea M. Simonton
      All counsel of record